UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

APR - 6 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

MICHAEL K. HART,

        Plaintiff,

v.                                              ACTION NO. 2:08cv56

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Michael K. Hart ("Hart"), brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Hart's claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), for report and recommendation by order of reference filed October 20, 2008. For the reasons expressed herein, the Court recommends that the Commissioner's decision be AFFIRMED and the case be DISMISSED.

## I. PROCEDURAL BACKGROUND

On April 25, 2005, Hart filed an application for DIB alleging an onset of disability as of February 11, 2005 due to diabetes and

mental problems. (R.[1] 15, 53-55.) Hart's application was denied by the Social Security Administration initially on August 9, 2005 (R. 43-47), and upon reconsideration on December 16, 2005 (R. 49-51). On February 6, 2006, Hart requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. 52.) That hearing was held in Newport News, Virginia, on June 6, 2007. (R. 15, 278-293.) Hart appeared by video conference from Salisbury, Maryland. (R. 15.) Hart was not represented by counsel at the hearing; the ALJ informed Hart of his right to counsel but Hart declined representation. (R. 280.) An independent vocational expert, Edith Edwards, testified at the hearing. (R. 290.) On August 20, 2007, the ALJ issued a decision (R. 15-24), which found that while Hart was unable to return to his past employment, he retained the residual functional capacity to perform other jobs that existed in the national economy, and thus Hart was deemed to be not disabled and ineligible for DIB. (R. 24.)

On September 4, 2007, Hart requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (R. 11.) On November 30, 2007, the Appeals Council denied review of Hart's claim. (R. 5-7.) This makes the ALJ's decision the "final decision of the

---

[1] "R." refers to the transcript of the administrative record of proceedings relating to this case.

Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g).  20 C.F.R. §§ 404.981, 416.1481.

Hart brought the instant action seeking judicial review of the decision of the Commissioner denying his claim for DIB.  Hart filed the instant complaint on January 30, 2008, which Defendant answered on September 30, 2008.[2]  Hart filed a motion for summary judgment with a memorandum in support on December 4, 2008.  Defendant filed a motion for summary judgment and in opposition to Hart's motion for summary judgment with a memorandum in support on January 2, 2009.  The Court received no response from Hart to Defendant's motion for summary judgment.  As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for decision based on the memoranda.

## II. FACTUAL BACKGROUND

Hart is a fifty-one year male, who was forty-nine at the time of the ALJ hearing.  (R. 283-84.)  Hart graduated from high school and worked at the United States Postal Service as a window clerk for eighteen years, which required interacting with customers and lifting up to seventy pounds.  (R. 284-86.)  Hart left that job because he was stressed and claims he was being harassed.  (R. 286.)  Hart alleges that he became disabled as of February 11, 2005

---

[2] There was a dispute regarding whether the Complaint was properly served on Defendant, which explains the eight month gap between the filing of the Complaint and the filing of the Answer.

3

(R. 17); Hart has not engaged in substantial gainful activity since that date.  (R. 285.)

The ALJ found that, at the time of the hearing, Hart suffered from depression and diabetes mellitus, which the ALJ found to be severe impairments.  (R. 17.)  The ALJ, however, found that these severe impairments did not meet or exceed one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (R. 18.)  The ALJ then found that Hart had the residual functional capacity to perform light or sedentary work, but restricted Hart to the performance of simple, repetitive tasks with no close interaction with the general public.  (R. 19.)  Therefore, the ALJ found that Hart could not return to his past work as a postal clerk but that there is a significant number of jobs in the national economy that Hart could perform.  (R. 22-23.)  Accordingly, the ALJ found Hart to be not disabled within the meaning of the Social Security Act.  (R. 23.)

### III. STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

4

(1986). Facts are deemed material if they might affect the outcome of the case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. <u>Id.</u>

In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the non-moving party. <u>Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.</u>, 763 F.2d 604, 610 (4th Cir. 1985). "If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor." <u>O'Connor v. Consol. Coin Caterers Corp.</u>, 56 F.3d 542, 545 (4th Cir. 1995) (quoting <u>Anderson</u>, 477 U.S. at 251-52). Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," <u>Celotex</u>, 477 U.S. at 322, as the non-moving party is required to "set forth specific facts showing that there is a genuine issue for trial" with respect to that element. Fed. R. Civ. P. 56(e).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." <u>Taft Broad. Co. v. United States</u>, 929 F.2d 240, 248 (6th

Cir. 1991). "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## IV. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner ultimately held that Hart was not under a disability within the meaning of the Social Security Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam) (superceded in non-relevant part by 20 C.F.R. §§ 404.1517(d)(2), 416.927(d)(2)); Hays v. Sullivan, 907 F.2d 1453 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter, 993 F.2d at 34 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and

6

resolve conflicts in the evidence. Hays, 907 F.2d at 1453 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence or of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). The issue before this Court, therefore, is not whether Hart is disabled, but whether the Commissioner's finding that Hart is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

## V. ANALYSIS

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(1)(a). To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(2)(A).

### A. Development of the Administrative Record

Hart argues that the ALJ failed to adequately develop the administrative record in four ways: (1) the ALJ failed to adequately ask Plaintiff about his treatment; (2) the ALJ failed to obtain additional medical records; (3) the ALJ failed to recontact Dr. Abbey Strauss for additional medical evidence; and (4) the ALJ

---

[3]A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[4]"Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

8

failed to obtain a consultative examination of Hart.  The Court takes each argument in turn.

Generally, "the ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ may develop the record by questioning witnesses, requesting evidence, and subpoenaing witnesses. 20 C.F.R. §§ 404.944, 404.950(d).  When the claimant is not represented by counsel at the hearing before the ALJ, "the ALJ should 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980) (quoting Gold v. Secretary of Health, Education and Welfare, 463 F.2d 38, 43 (2d Cir. 1972)).  However, the Court notes that it is the plaintiff's burden to present evidence of disability, Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981), and plaintiff bears the burden of non-persuasion. Seacrist v. Weinberger, 538 F.2d 1054, 1057 (4th Cir. 1976).  The ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).

As an initial matter, the Court notes that there are few medical records for Hart between late 2005 and the time of the hearing before the ALJ in June 2007.  Hart's arguments regarding

whether the ALJ adequately developed the administrative record concern the presence or lack thereof of medical records in this time period.  There is nothing in the record to indicate that this lack of medical records was due to Hart being unable to appropriately treat his medical conditions or Hart not submitting medical records.  Rather, it appears that, with the exception of Hart seeing two mental health professionals - one of whose records is in the administrative record - Hart simply did not seek medical treatment regarding anything Hart deemed relevant to the Commissioner's evaluation of his disability claim.  Moreover, it was incumbent upon Hart to submit all relevant medical records, and the ALJ left the record open for thirty days for him to do so.  (R. 293.)  Nor is there any evidence that Hart's condition worsened in that time span.  It is with this background in mind that the Court turns to Hart's individual arguments.

First, Hart argues that the ALJ failed to ask Hart about the identity of his health care providers, the nature of his treatment, or the availability of additional records.  Hart also argues the ALJ failed to advise him to provide evidence relating to the twenty-one month period prior to the hearing before the ALJ.  The Court notes that the ALJ did not ask Hart about his health care providers or the nature of his treatment.  (See R. 280-93.)  The ALJ did note, however, that he reviewed Hart's medical records; therefore, the ALJ's failure to have Hart confirm the accuracy of

10

those records - which Hart does not now dispute - would have added nothing. Additionally, the ALJ did not tell Hart that he needed to submit evidence regarding the twenty-one month period prior to the hearing. Instead, Hart told the ALJ that he was seeing a psychologist and a psychiatrist, and that his psychiatrist would be submitting some medical records soon. (R. 288.) In response, the ALJ told Hart that he was leaving the record open for thirty days for those records to be submitted, (R. 288); the ALJ repeated this statement at the close of the hearing. (R. 293.) The ALJ also told Hart that if he had trouble submitting the records within that time period he could "contact my office and we'll work with you." (R. 288.) The Court believes these statements by the ALJ were sufficient to give Hart adequate notice and opportunity to submit additional evidence. Indeed, Hart submitted Dr. Strauss's report of June 28, 2007, after the June 6, 2007 hearing before the ALJ.[5]

Second, Hart argues that the ALJ failed to obtain additional medical records. Hart argues that the ALJ did not incorporate Dr. Lewis Kudushin's records into the administrative record and that the ALJ did not attempt to obtain a vocational rehabilitation evaluation allegedly conducted by Dr. Kudushin. That evaluation was referenced in a report by Dr. Strauss, who conducted a separate evaluation of Hart. (R. 273-74.) Dr. Strauss, by report dated

---

[5] Dr. Strauss is a psychiatrist. Her records reflect her treatment of Hart during the twenty-one month period in question.

June 28, 2007, noted that she had spoken with Dr. Kudushin by telephone on June 11, 2007. (R. 273.) During that conversation, Dr. Kudushin apparently conveyed to Dr. Strauss that Hart had entered into verbal psychotherapy with him. (R. 273.) Dr. Kudushin also relayed that a vocational rehabilitation evaluation had been performed on Hart; the evaluation found that Hart would be unable to return to any job at the post office. (R. 273.) The Court notes, however, that Hart told the ALJ that he would submit additional psychiatric records and the ALJ accordingly held the record open for thirty days for Hart to do so. (R. 288.) Hart testified that he was seeing a psychiatrist and a psychologist and that he would be submitting his psychiatrist's records. (R. 288.) Dr. Strauss is a psychiatrist; Dr. Kudushin a psychologist. Hart promptly submitted Dr. Strauss's records, but chose not to submit Dr. Kudushin's records. The ALJ cannot be faulted for Hart's choice. Therefore, the ALJ's decision to hold open the record for thirty days for Hart to submit additional records was sufficient to adequately fulfill his duty to develop the administrative record. Similarly, the ALJ found that Hart could not return to work at the post office, (R. 22.) - a finding echoed by Dr. Kudushin's vocational rehabilitation evaluation. That the ALJ did not affirmatively develop the administrative record to include the evaluation is therefore not erroneous.

Additionally, Hart argues that the ALJ did not attempt to

12

obtain a functional assessment of Hart from Dr. Jack Snitzer. The Court finds no basis for this claim because the records of Dr. Snitzer, who treated Hart for diabetes, are in fact in the administrative record. (R. 133-37.)

Third, Hart argues that the ALJ was required to recontact Dr. Strauss to obtain additional information. Hart bases his argument upon 20 C.F.R. § 404.1512(e), which provides:

> Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> > (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source <u>when the report from your medical source contains a conflict or ambiguity that must be resolved</u>, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques . . . .

(emphasis added). Hart argues that because the ALJ found Dr. Strauss's report to be "inconsistent with other substantial evidence in the case record," (R. 22), the ALJ was required to recontact Dr. Strauss to clarify the record. The Court disagrees. It is clear that the ALJ must only recontact a medical source when the source's report is itself inconsistent or ambiguous, for it is the explicit job of the ALJ to resolve and adjudicate external

inconsistencies between differing medical reports. There is nothing internally inconsistent or ambiguous about Dr. Strauss's report. It is also questionable whether Dr. Strauss could be called a "treating psychologist" because, while Hart resides in Maryland, Dr. Strauss is located in Florida, and Dr. Strauss noted that that distance made it "almost impossible" to treat Hart. (R. 274.)

Fourth, Hart argues the ALJ failed to order a consultative examination of Hart. 20 C.F.R. § 404.1512(f) provides that a consultative examination is required when the needed information "is not readily available from the records of [the claimant's] medical treatment source, or [the Commissioner is] unable to seek clarification from [the claimant's] medical source." A consultative examination is also required when the evidence in the record, as a whole, is not sufficient to support a decision or when "[t]here is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established." 20 C.F.R. § 1519a(b). In this case, Hart did undergo a consultative evaluation with Dr. Richard Shea on August 1, 2005. (R. 173-76.) Hart asserts that he was entitled to another consultative examination because his hearing before the ALJ was not held until June 2007. The Court, however, sees no reason for an additional consultative examination to be necessary. The ALJ did not experience any difficulty

14

receiving information from Hart's medical sources; there was substantial evidence in the record, from multiple medical sources, to support a decision in the case; and there is no indication that Hart's condition worsened from the date of the consultative examination to the date of the hearing before the ALJ - Hart did not testify that his condition had worsened, (R. 283-93), nor did Dr. Strauss's report of June 28, 2007 indicate that Hart's condition had worsened because the report noted his condition had been present for more than two years. (R. 274.) Therefore, the ALJ properly and adequately developed the administrative record.

## B. Sequential Disability Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. §§ 404.1520 and 416.920. See Hall, 658 F.2d at 264-65. Under this process, the ALJ must determine in sequence:

(1)  Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is not disabled and the inquiry is halted.

(2)  Whether the claimant has a severe impairment. If not, the claimant is not disabled and the inquiry is halted.

(3)  Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational

15

criteria.   If so, the claimant is disabled and the inquiry is halted.

(4)   Whether the impairment prevents the claimant from performing past relevant work.  If not, the claimant is not disabled and the inquiry is halted.

(5)   Whether the claimant is able to perform any other work considering both his residual functional capacity[6] and his vocational abilities.  If so, the claimant is not disabled.

### i.   Steps One Through Three

At step one of the sequential disability analysis, the ALJ found that Hart had not engaged in substantial gainful activity since the date of alleged onset of disability, February 11, 2005. (R. 17.)   At step two, the ALJ found that Hart had two severe impairments pursuant to 20 C.F.R. § 404.1520(c): depression and diabetes mellitus.   (R. 17.)  And at step three of the sequential disability analysis, the ALJ found that Hart does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 18.)  Hart does not dispute these findings.

---

[6] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms (e.g., pain).   See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

16

### ii.  Residual Functional Capacity and Steps Four and Five

#### a.  The ALJ's Analysis

Prior to steps four and five, the ALJ determined Hart's residual functional capacity.  (R. 19.)  This included the ALJ's evaluation of the objective medical evidence in the record, including the findings of treating and other consultative physicians.  (R. 19-22.)  The ALJ also considered Hart's testimony and the factors listed in 20 C.F.R. § 404.1529(c).  (R. 19-22.) Based on the evidence as a whole, the ALJ determined that Hart retained the residual functional capacity to perform light work and sedentary work.  Light work involves being able to lift up to twenty pounds, to lift ten pounds frequently, to walk or stand a good deal, and, if it involves sitting most of the time, to push and pull arm and leg controls.  20 C.F.R. § 404.1567(b).  If a claimant can do light work, he is also capable of performing sedentary work unless additional limiting factors are present.  Id. Specifically, the ALJ found that Hart is "capable of lifting and carrying 20 pounds occasionally, 10 pounds frequently, sitting at least six hours out of eight and standing and/or walking six hours out of eight. He is further limited to the performance of simple, repetitive tasks and jobs requiring no close interaction with the general public."  (R. 19.)

At step four, the ALJ found that Hart did not have the residual functional capacity to perform any past relevant work.

17

It is the claimant who bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512, 416.912; Smith v. Califano, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of severe impairment, and lacks the residual functional capacity to return to his former employment, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national or local economy that the claimant could perform consistent with his residual functional capacity, age, education, and past work experience. Hunter, 993 F.2d at 35; Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).

In the instant case, the ALJ found that Hart was forty-seven years old on his alleged onset of disability date, which classifies Hart as a "younger individual" between 18-49 within the meaning of 20 C.F.R. § 404.1563. (R. 22.) The ALJ found that transferability of job skills is not material to the determination of disability in this case because the Medical-Vocational Rules support a finding that Hart is not disabled, regardless of transferability of job skills. (R. 23.) After considering the testimony of the vocational expert, the ALJ found that there are light and sedentary jobs that exist in significant numbers in the national economy that Hart can perform. (R. 23.) Therefore, at step five, Hart was found to be not disabled. (R. 23.)

18

### b.  Hart's Claims

Hart argues that the ALJ erroneously assessed Hart's residual functional capacity for four reasons: (1) the ALJ failed to set forth a narrative discussion as required by Social Security Ruling 96-8p; (2) the ALJ failed to evaluate pertinent evidence and properly evaluate Dr. Shea's medical opinions; (3) the ALJ was required to perform a more detailed analysis of Hart's mental impairments; and (4) the ALJ erroneously rejected the opinions of Dr. Strauss.  The Court will take each argument in turn.

Regarding Hart's first argument, Hart claims that the ALJ failed to set forth a narrative discussion describing how the evidence supported each conclusion, "failed to discuss the Plaintiff's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . , failed to describe the maximum amount of each work-related activity" Hart could perform, and "failed to explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  Pl. Mem. Supp. SJ 11.  Each of these claims is a near replica of the language of Social Security Ruling 96-8p setting forth the narrative discussion requirements of an ALJ's analysis.  That ruling regards the assessment of a claimant's residual functional capacity.  Social Security Rule 96-8p.  That assessment must include a narrative discussion describing how the evidence supports each conclusion by

citing specific medical and non-medical facts in the record.  Id.
In so doing, the ALJ must engage in a function by function
analysis, discussing the claimant's functional limitations
discernable from the relevant evidence in the record.  Id.  In
other words, the form of the ALJ's analysis is that the ALJ
examines the relevant evidence in the record, determines from that
evidence whether the claimant has any functional limitations, and,
if any functional limitations are found, factor those limitations
into the residual functional capacity assessment.  See id.

Here, the ALJ adequately followed the form of the analysis
required by Social Security Ruling 96-8p.  The ALJ first examined
and discussed Hart's own testimony and concluded that Hart's
"medically determinable impairments could reasonably be expected to
produce the alleged symptoms," but that Hart's statements regarding
the severity of the effects of the symptoms to be "not entirely
credible."   (R. 21.)   The ALJ next discussed Hart's medical
history, thoroughly examining the medical evidence in the record.
(R. 21-22.)   Taking into account Hart's age, education, work
experience, and residual functional capacity, the ALJ found that
Hart could perform light work; specifically, Hart was able to
occasionally lift and carry twenty pounds, frequently lift and
carry ten pounds, sit at least six hours out of eight and stand
and/or walk six hours out of eight.  (R. 19, 23.) The ALJ also
discussed the only inconsistency in the record - Dr. Strauss's

opinion - and resolved the issue. (R. 22.) The ALJ did all of this through a narrative discussion. Therefore, the Court disagrees with Hart's first argument and finds that the ALJ fully complied with Social Security Ruling 96-8p.

Second, Hart claims that the ALJ failed to evaluate pertinent medical evidence, namely, the evaluations of Drs. Robert Gerstle and Sreeja Kadakkal. Drs. Gerstle and Kadakkal are State Agency medical consultants. Regarding the opinions of Drs. Gerstle and Kadakkal, the ALJ specifically gave these doctors' opinions "significant weight because [they are] consistent with the overall evidence of record." (R. 22.) The Court therefore finds no merit to Hart's claim. Hart also claims that the ALJ failed to properly evaluate Dr. Shea's opinion. Regarding Dr. Shea's consultative examination opinion, the ALJ did not discuss every finding in Dr. Shea's report. (R. 21, 176.) The ALJ discussed Dr. Shea's conclusions regarding Hart's expressive language skills, his short and long term memory, his concentration, and his anxiety. (R. 21, 175-76.) The ALJ also noted that Dr. Shea found Hart would have trouble relating to co-workers, supervisors, and the general public. (R. 21, 176.) The ALJ did not discuss Dr. Shea's findings that Hart had low energy, could not handle stress well, and was depressed, and that these impairments would likely interfere with his functioning. (R. 21, 176.) That the ALJ did not discuss these findings is not reversible error, however, because the ALJ did

21

consider these findings when he discussed the opinions of Drs. Gerstle and Kadakkal. (R. 20-22.) Those doctors disagreed with Dr. Shea's opinions, and the ALJ gave the opinions of Drs. Gerstle and Kadakkal "significant weight." (R. 22, 191, 258.) The ALJ also found Hart's testimony regarding the severity of his symptoms to be not entirely credible. (R. 21.) Therefore, the Court disagrees with Hart's second argument.

Third, Hart argues that the ALJ was required to give a "more detailed" assessment of Hart's ability to perform the mental demands of work. Pl. Mem. Supp. SJ 14-15. Social Security Ruling 96-8p sets out the interaction between the ALJ's psychiatric review technique form ("PRTF"), 20 C.F.R. § 404.1520a, and the assessment of residual functional capacity. The PRTF findings are used to rate the severity of mental impairments for purposes of steps two and three of the sequential evaluation process. Social Security Ruling 96-8p. The mental residual functional capacity "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." Id.

At step three, the ALJ made PRTF findings. Specifically, the ALJ found that Hart has (1) mild restrictions relating to daily living; (2) moderate difficulties with social functions; (3)

22

moderate difficulties with concentration, persistence, and pace; and (4) no episodes of decompensation. (R. 18.) These are so-called "B" criteria. (R. 18.) These symptoms do not satisfy "B" criteria. (R. 18.) The ALJ also found no evidence to establish the presence of "C" criteria. (R. 19.) The ALJ then noted that a "more detailed" assessment was required when using these findings in regard to residual functional capacity and noted that he "translated the above 'B' and 'C' criteria findings into work-related functions in the residual functional capacity assessment." (R. 19.) In the residual functional capacity analysis, the ALJ did indeed translate the PRTF criteria into work-related functions. The ALJ analyzed Hart's (1) mild restrictions relating to daily living by discussing Hart's daily activities of playing with his dog, watching television, driving, performing household chores, and tending to his garden; (2) moderate difficulties with social functions by discussing Hart's infrequent social activity; (3) moderate difficulties with concentration, persistence, and pace by discussing Hart's medical records and testimony reflecting that he would have difficulty performing tasks that are not simple and repetitive; and (4) lack of decompensation by finding that Hart's symptoms had not worsened. (R. 20-22.) Therefore, the Court disagrees with Hart's third argument that the ALJ did not provide a more detailed assessment of Hart's capacity to perform the mental requirements of work.

Fourth, Hart argues that the ALJ erroneously rejected Dr. Strauss's opinion. Dr. Strauss evaluated Hart on four occasions - November 9, 2006, November 10, 2006, May 14, 2007, and May 15, 2007 - and found that Hart has trouble maintaining social functioning and concentration and that these limitations would significantly affect Hart's ability to perform basic work activities. (R. 273-74.) The ALJ thoroughly discussed Dr. Strauss's opinion and noted her findings. (R. 22.) The ALJ afforded her opinion little weight, however, because it was inconsistent with other substantial evidence in the administrative record. (R. 22.) If an opinion is inconsistent with other substantial evidence in the administrative record then the ALJ may give the opinion little weight. Craig, 76 F.3d at 590. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. Id. at 589 (citing Hays, 907 F.2d at 1456). Therefore, this Court will not disturb the ALJ's finding that Dr. Strauss's opinion is entitled to little weight.

### C. **New Evidence**

Finally, Hart seeks to introduce new evidence regarding his condition. The new evidence includes a psychiatric evaluation by Dr. Daniel Smithpeter, dated September 2, 2008, and a neurocognitive evaluation by Dr. Rick Parente, dated March 28, 2008. Pl. Mem. Supp. SJ Exs. A & B. Among other things, for new

24

evidence to be considered, the new evidence must "relate to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). The evidence must concern whether the claimant was disabled during this relevant period of time. <u>See</u> <u>Wooldridge v. Bowen</u>, 816 F.2d 157, 160 (4th Cir. 1987); <u>Cox v. Heckler</u>, 770 F.2d 411, 413 (4th Cir. 1985); <u>Brock v. Heckler</u>, 612 F. Supp. 1348, 1354 (D.S.C. 1985). Here, Hart's new evidence relate to Hart's condition after the ALJ hearing. Therefore, the Court will not consider Hart's new evidence.

## D. **Conclusion**

The ALJ fully developed the record in this case. Further, the ALJ's determination of Hart's residual function capacity - that he can do light and sedentary work that involves simple, repetitive tasks and requires no close interaction with the general public - is supported by substantial evidence and based upon a correct application of the relevant law, as was the ALJ's determination of the appropriate weight to be given the medical opinions in the record. Finally, the Court will not consider Hart's new evidence because it is not relevant to Hart's condition as of the time of his hearing before the ALJ.

## VI. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be UPHELD, that Defendant's motion for summary judgment be GRANTED, and that Plaintiff's motion for

25

summary judgment be DENIED.  Accordingly, the Court recommends that the case be DISMISSED.

## VII. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof.  See Fed. (R. Civ. P. 72(b).

2.  A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

26

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

United States Magistrate Judge

Norfolk, Virginia
April  6  , 2009

27

**CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Scott Bertram Elkind
Elkind & Shea
801 Roeder Rd
Suite 550
Silver Spring, MD 20910
Counsel for Plaintiff

Anita Kay Henry
Assistant United States Attorney
United States Attorney's Office
World Trade Center
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for Defendant

Fernando Galindo, Clerk

By: _____
Deputy Clerk

April 6 , 2009

28